FILED

August 20, 2015

TN COURT OF
WORKERS' COMPENSATION
CLAIMS

Time: 1:50 PM



# IN THE COURT OF WORKERS' COMPENSATION CLAIMS
## AT KNOXVILLE

| | |
|---|---|
| **MITCHEL HELGERSON,**<br>**Employee,** | **Docket No.: 2014-03-0023** |
| **v.** | **State File No.: 65382-2014** |
| **PACKER SANITATION SERVICES, INC.,**<br>**Employer,** | **Date of Injury: August 8, 2014** |
| **And** | **Judge: Pamela B. Johnson** |
| **INDEMNITY INS. CO. OF AMERICA,**<br>**Insurance Carrier.** | |

---

## EXPEDITED HEARING ORDER FOR MEDICAL BENEFITS

---

THIS CAUSE came before the undersigned Workers' Compensation Judge upon the Request for Expedited Hearing filed June 1, 2015, by the Employee, Mitchel Helgerson (Mr. Helgerson), pursuant to Tennessee Code Annotated section 50-6-239 (2014). The Court convened an in-person, evidentiary hearing on July 31, 2015. Upon review of the Request for Expedited Hearing, the evidence presented at the hearing, the arguments of counsel for the parties, and in consideration of the applicable law, the Court enters the following order holding that Mr. Helgerson is entitled to medical benefits.

### Issues

The parties marked numerous issues on the Dispute Certification Notice (DCN) filed in this claim. The Court did not decide issues marked on the DCN unless presented for determination during the Expedited Hearing. The parties agreed that the following issues exist for determination:

*Whether Mr. Helgerson sustained an injury arising primarily out of and in the course and scope of his employment with Packer Sanitation Services, Incorporated (PSSI);*

*If so, whether Mr. Helgerson is entitled to medical benefits and temporary disability benefits.*

1

**Stipulation of the Parties**

The parties, through counsel, announced to the Court the following stipulation:

- At the time of the injury, Mr. Helgerson's compensation rate was $330.73 per week based on an average weekly wage of $496.07 per week.

**Evidence Submitted**

The following witnesses provided in-person testimony:

- Mr. Helgerson; and
- Jason Sharp.

The Court admitted into evidence the following:

- EXHIBIT 1: Affidavit of Mitchel Helgerson;
- EXHIBIT 2: Medical Records of Nova Care;
- EXHIBIT 3: First Report of Work Injury, date of injury of August 8, 2014;
- EXHIBIT 4: First Report of Work Injury, date of injury of August 9, 2014;
- EXHIBIT 5: Wage Statement, Form C-41;
- EXHIBIT 6: Panel of Physicians, Form C42;
- EXHIBIT 7: Notice of Change or Termination of Compensation Benefits, Form C26;
- EXHIBIT 8: Notice of Controversy, Form C27;
- EXHIBIT 9: Collective Exhibits 9a-9d: Disciplinary Reports;
- EXHIBIT 10: Employee Resignation/ Termination Form;
- EXHIBIT 11: Letter to Mr. Helgerson, dated November 12, 2014; and
- EXHIBIT 12: Audio Recording of Telephone Conference with Medcor, Mr. Helgerson, and Jason Sharp.

The Court designated the following as the Technical Record:

- Petition for Benefit Determination, filed October 18, 2014;
- Dispute Certification Notice, filed December 3, 2014;
- Request for Initial Hearing, filed January 29, 2015;
- Preliminary Initial Hearing Order, filed March 4, 2015;
- Motion to Amend Scheduling Order, filed May 6, 2015;
- Order Amending Scheduling Order, filed May 19, 2015;
- Request for Expedited Hearing, filed June 1, 2015;
- Motion to Quash Request for Expedited Hearing, filed June 4, 2015;

2

- Response in Opposition to Request for Expedited Hearing, filed June 9, 2015;
- Order Denying Motion to Quash, filed July 2, 2015;
- Agreed Order Amending the Amended Scheduling Order, filed July 21, 2015; and
- Post-Expedited Hearing Brief, filed August 17, 2015.[1]

The Court did not consider attachments to the above filings unless admitted into evidence during the Expedited Hearing. The Court considered factual statements in the above filings and any attachments to them as allegations unless established by the evidence.

## History of Claim

Mr. Helgerson is a thirty-eight-year-old resident of Knox County, Tennessee. PSSI contracted with Custom Foods to clean its facility located in Knoxville, Tennessee. Custom Foods prepares, packages, and sells various foods, soups, and sauces.

Mr. Helgerson worked for PSSI as a laborer beginning in July 2013. PSSI promoted Mr. Helgerson to lead person in May 2014. Mr. Helgerson worked the night shift.

On the evening of August 8, 2014, Mr. Helgerson reported for work at Custom Foods and began cleaning in the "Tray Room." Shortly after midnight (August 9, 2014), Mr. Helgerson stepped off a step stool and his right foot slipped. He felt a pop in his right knee followed by immediate pain. (Ex. 1.)

The parties dispute when Mr. Helgerson provided notice of the work incident to PSSI. However, by August 13, 2014, PSSI received notice that Mr. Helgerson allegedly sustained a right-knee injury during the course of his employment. (Ex. 3 and 4.)

PSSI provided authorized treatment with Dr. J. Donald King, Jr. of Nova Medical Centers. Dr. King first examined Mr. Helgerson on August 14, 2014. Mr. Helgerson reported, "He stepped off a step stool and twisted his R [right] knee and felt it pop." Mr. Helgerson also reported a "previous meniscus repair around 2002" with "no known impairment or restrictions." Dr. King diagnosed right derangement of anterior horn of medial meniscus; effusion of joint; and sprain of medial collateral ligament of knee. Dr. King recommended physical therapy and a knee brace. Dr. King released Mr. Helgerson to return to work with restrictions. (Ex. 2 at 9-11.)

---

[1] PSSI's counsel filed a Post-Expedited Hearing Brief on August 17, 2015. PSSI did not request permission to file a post-hearing brief. Rule 6.02 of the Court's Practices and Procedures provides, "The use of post-hearing briefs for Expedited Hearings and Compensation Hearings is permitted only in extraordinary circumstances and with approval of the assigned Judge." Accordingly, the Court did not review or consider PSSI's Post-Expedited Hearing Brief.

Mr. Helgerson remained under the care of Dr. King. On August 28, 2014, Mr. Helgerson returned to Dr. King and reported an "episode in [physical therapy] yesterday with weight shifts and popping catch on medial aspect of [right] knee causing increased pain." Dr. King recommended that Mr. Helgerson continue physical therapy and ordered a right-knee MRI scan. Mr. Helgerson remained on restricted duty. (Ex. 2, pp. 4-8.)

Mr. Helgerson returned to Dr. King following the right-knee MRI scan. Dr. King reviewed the MRI, which showed: "1. Large bucket handle tear, medial meniscus; 2. 1cm cyst, ganglion versus parameniscal cyst adjzcent [sic] to the anterior root medial meniscus; 3. High grade ACL tear, Suspect chronic; 4. Small to moderate joint effusion; [and] 5. Minimal chondromalacia." Dr. King recommended that Mr. Helgerson continue physical therapy, and referred him to an orthopedic physician for consultation. Mr. Helgerson remained on restricted duty until his return appointment on September 12, 2014. (Ex. 2 at 1-2.)

On September 15, 2014, PSSI issued a Notice of Controversy, Form C-27, and Notice of Change or Termination of Compensation Benefits, Form C-26, stating, "Employer's report of mechanism of injury is inconsistent with the previous report to the supervisor and injuries as identified by the authorized doctor." PSSI notified Mr. Helgerson of the denial on September 15, 2014. (Ex. 7-8.)

Mr. Helgerson filed a Petition for Benefits Determination on October 28, 2014. The parties did not resolve the disputed issues through mediation and the Mediating Specialist filed the Dispute Certification Notice on December 3, 2014. On June 1, 2015, Mr. Helgerson filed a Request for Expedited Hearing. This Court conducted an in-person, evidentiary hearing on July 31, 2015.

During the evidentiary hearing, Mr. Helgerson testified that, on the evening of August 8, 2014, he reported to work for PSSI at Custom Foods. On that evening, he denied any problems with his right knee. While performing his normal job cleaning pipes in the Tray Room, he stepped off a step stool and slipped and his right knee popped. He took a break and called his father to bring him a knee brace, because he thought at the time that he merely sprained his knee. While on break, he also informed Adam Welch, the assistant supervisor for PSSI, that he injured his knee but thought it would be okay.

Mr. Helgerson testified that he worked the following night and told Mr. Welch that his knee bothered him. He took the next two nights off, but called Jason Sharp, the Site Manager, each night to report that he was not reporting to work. Mr. Helgerson testified that, when he next reported to work, he told Mr. Sharp that he needed to file a workers' compensation claim. Mr. Helgerson testified that Mr. Sharp wanted him to use his private health insurance "because he [Mr. Sharp] didn't want to get anyone in trouble

4

for not filing a report in the time they were supposed to."

Mr. Helgerson testified that, following the work incident, he treated for approximately one and one-half months and worked light duty. PSSI then denied the claim and Mr. Sharp told Mr. Helgerson that he could not continue working "without getting a 'Fit for Duty' paper filled out." (*See* also Ex. 11.) Mr. Helgerson denied that he quit. He testified that he has not worked since his termination from PSSI.

Mr. Helgerson admitted on cross-examination that he injured his right knee in approximately 2002 and required surgical repair. He further admitted that this claim was not his first workers' compensation claim. He made a claim for his prior right-knee injury.

Mr. Helgerson, however, denied that he told Mr. Sharp on August 10 that his right-knee injury was an old injury, also denied that he said to Mr. Sharp that his right knee required surgery, and further denied that he stated his right knee never fully recovered 100%. Mr. Helgerson testified that he never told Mr. Sharp about his previous knee injury. Mr. Sharp learned of his prior knee injury because he attended a doctor's appointment with Mr. Helgerson, where he discussed the prior knee injury with the doctor.

Mr. Helgerson instead confirmed that he told Mr. Sharp that he injured his right knee in the Tray Room at work, and Mr. Sharp told him he could take two days off work. Mr. Helgerson additionally testified that he told Mr. Welch that he injured his right knee at work on the night it happened and while putting on the knee brace his father brought to him.

Mr. Helgerson denied that he was "afraid of being terminated" because "he missed two days from work." He also denied that he "concocted this story about a workers' comp injury for fear of losing [his] job." He further denied that he made a claim to "save [his] job and get some free medical bills."

Mr. Sharp testified that he did not work the evening of Friday, August 8, 2014. However, his supervisor, Mr. Welch, worked the evening of August 8 and did not advise Mr. Sharp of any injury involving Mr. Helgerson. On Wednesday, August 13, Mr. Helgerson approached Mr. Sharp and advised that he injured his right knee "sometime after midnight on August 9th." In response, with Mr. Helgerson present, Mr. Sharp placed a call to MedCor to report Mr. Helgerson's work injury. Mr. Sharp questioned the compensability of Mr. Helgerson's injury "because it had not been reported yet . . . until, until that night."

Mr. Sharp testified that he worked with Mr. Helgerson on August 10, observed him wearing a knee brace, and asked him for an explanation. Mr. Helgerson told Mr.

5

Sharp that "it was a prior injury and his knee was sore." Mr. Sharp further testified Mr. Helgerson told him that he sustained a prior knee injury, which required surgery, and did not heal 100%. Mr. Sharp denied that Mr. Helgerson referenced the August 9 work injury during the August 10 discussion. Mr. Sharp testified that Mr. Helgerson did not report to work as scheduled on Monday, August 11, or Tuesday, August 12.

Mr. Sharp further testified that PSSI issued "Employee Disciplinary Reports" involving Mr. Helgerson for tardiness. (*See also* Ex. 9a-9c.) Subsequent to the issuance of the disciplinary reports, Mr. Sharp admitted that PSSI promoted Mr. Helgerson to lead person in May 2014.

Mr. Sharp testified that, on August 14, 2014, PSSI disciplined Mr. Helgerson on the basis that "Employee did not notify management of [the] accident immediately." (Ex. 9d.) Mr. Sharp testified that Mr. Helgerson did not appear for work and did not call in to report his absence for three days. After the three-day "no call/ no show," PSSI completed the "Employee Resignation/ Termination Form" regarding Mr. Helgerson. (Ex. 10.) The "Employee Resignation/ Termination Form" noted that Mr. Helgerson "quit" on December 9, 2014, and last worked on "10-19-14 per benefits." The "Employee Resignation/ Termination Form" further noted that "[Mr. Helgerson] did not return FMLA paperwork and did not return to work."

## Mr. Helgerson's Contentions

Mr. Helgerson contends that he sustained a right-knee injury on August 9, 2014, arising primarily out of and in the course and scope of his employment with PSSI. He timely reported the work injury to Mr. Welch and Mr. Sharp, who excused him from work for two days. PSSI provided authorized medical treatment. PSSI accepted the claim as compensable until the authorized treating physician ordered an MRI and referred Mr. Helgerson to an orthopedic physician. Although Mr. Helgerson sustained a prior right-knee injury, he did not have right-knee problems for ten to twelve years prior to the August 9 work injury. Mr. Helgerson did not quit, but PSSI did not allow him to return to work until he submitted a completed "Fit for Duty" form. Mr. Helgerson is entitled to medical benefits and temporary disability benefits from the time PSSI placed him off work.

## PSSI's Contentions

PSSI contends that Mr. Helgerson failed to demonstrate that he sustained a work injury primarily arising out of and in the course and scope of his employment. Mr. Helgerson is not entitled to any presumption. Mr. Helgerson told Mr. Sharp that he suffered from a previous injury, which required surgery, and from which he never fully recovered. Mr. Helgerson did not report a work injury to PSSI until after he missed two days of work and due to fear of termination for his absences. PSSI asserts that Mr.

6

Helgerson offered conflicting statements as to when the alleged work injury occurred, and the dates he allegedly reported the work injury to Mr. Sharp and Mr. Welch. PSSI additionally argues the medical reports show a previous injury to the right knee, but do not show evidence of a new injury.

## Findings of Fact and Conclusions of Law

### Standard Applied

The Workers' Compensation Law shall not be remedially or liberally construed in favor of either party but shall be construed fairly, impartially and in accordance with basic principles of statutory construction favoring neither the employee nor employer. Tenn. Code Ann. § 50-6-116 (2014). An employee need not prove every element of his or her claim by a preponderance of the evidence in order to obtain relief at an expedited hearing. *McCord v. Advantage Human Resourcing*, No. 2014-06-0063, 2015 TN Wrk. Comp. App. Bd. LEXIS 6, at *7-8, 9 (Tenn. Workers' Comp. App. Bd. Mar. 27, 2015). At an expedited hearing, an employee has the burden to come forward with sufficient evidence from which the trial court can determine that the employee is likely to prevail at a hearing on the merits. *Id.*

### Factual Findings

The Court finds as follows:

- Mr. Helgerson sustained an injury to his right knee shortly after midnight on August 9, 2014, while in the course and scope of his employment with PSSI.
- Mr. Helgerson timely reported the work injury to PSSI as required by Tennessee Code Annotated section 50-6-201 (2014).
- At the time of the injury, Mr. Helgerson's compensation rate was $330.73 per week based on an average weekly wage of $496.07 per week.
- PSSI provided authorized medical treatment with Dr. King through September 5, 2014.
- Dr. King assigned work restrictions to Mr. Helgerson of a maximum of one hour per day of kneeling/ squatting, bending/ stooping, walking, and climbing stairs/ ladders.
- Dr. King assigned the work restrictions beginning August 14, 2014, and continued the restrictions through his last documented visit of September 5, 2014.
- While receiving authorized treatment, Mr. Helgerson worked light duty for PSSI.
- PSSI terminated Mr. Helgerson's workers' compensation benefits effective

7

September 15, 2014.

- PSSI terminated Mr. Helgerson on December 9, 2014, for failure to return completed "Fit for Duty" paperwork.

*Application of Law to Facts*

To be compensable under the workers' compensation statutes, an injury must arise "primarily out of and in the course and scope of employment[.]" Tenn. Code Ann. § 50-6-102(13) (2014). An injury means "an injury by accident . . . arising primarily out of and in the course and scope of employment, that causes death, disablement or the need for medical treatment of the employee." *Id.* For an injury to be accidental, it must be "caused by a specific incident, or set of incidents, arising primarily out of and in the course and scope of employment, and is identifiable by time and place of occurrence, and shall not include the aggravation of a preexisting disease, condition or ailment unless it can be shown to a reasonable degree of medical certainty that the aggravation arose primarily out of and in the course and scope of employment." Tenn. Code Ann. § 50-6-102(13)(A) (2014).

"An injury 'arises primarily out of and in the course and scope of employment' only if it has been shown by a preponderance of the evidence that the employment contributed more than fifty percent (50%) in causing the injury, considering all causes." Tenn. Code Ann. § 50-6-102(13)(B) (2014).

Tennessee Code Annotated section 50-6-204(a)(1)(A) (2014) provides that an employer shall furnish to the employee such medical treatment as is "made reasonably necessary by accident." Tenn. Code Ann. § 50-6-204(a)(1)(A) (2014). The opinion of the treating physician, selected by the employee from the employer's designated panel of physicians shall be presumed correct on the issue of causation but this presumption shall be rebuttable by a preponderance of the evidence. Tenn. Code Ann. § 50-6-102(13)(E) (2014).

In the present case, shortly after midnight on August 9, 2014, Mr. Helgerson stepped off a step stool and his right foot slipped. He felt a pop in his right knee followed by immediate pain. The incident occurred while Mr. Helgerson performed his job duties for PSSI in the "Tray Room" at Custom Foods. Mr. Helgerson reported the work injury timely to PSSI and described by time and place how the specific incident occurred. PSSI initially accepted the injury as compensable and provided authorized medical treatment. PSSI later denied the claim based upon inconsistencies in how Mr. Helgerson reported the injury to his supervisor and to the authorized treating physician.

This Court finds Mr. Helgerson credible. Any inconsistencies in his report of the August 9, 2014 work incident were minor and caused by the fact that the work incident occurred during an overnight shift, which encompassed two calendar days. The medical

8

records of the authorized treating physician, Dr. King, support Mr. Helgerson's description of the work incident. Dr. King, however, does not provide an opinion on causation to allow this Court to determine whether Mr. Helgerson's right-knee injury of August 9, 2014, arose primarily out of and in the course and scope of his employment with PSSI. Therefore, while Mr. Helgerson has not proven by a preponderance of the evidence that he suffered an injury arising primarily out of and in the course and scope of his employment, he has shown that he is likely to prevail at a hearing on the merits. This Court holds that he satisfied his burden at this interlocutory stage to entitle him to a panel of orthopedic physicians as recommended by Dr. King.

This Court is unable to make a determination on the issue of temporary disability benefits. Dr. King assigned work restrictions to Mr. Helgerson of a maximum of one hour per day of kneeling/ squatting, bending/ stooping, walking, and climbing stairs/ ladders. Dr. King assigned the work restrictions beginning August 14, 2014, and continued the restrictions through his last documented visit of September 5, 2014. While receiving authorized treatment, Mr. Helgerson worked light duty for PSSI. However, PSSI terminated Mr. Helgerson's workers' compensation benefits effective September 15, 2014. PSSI terminated Mr. Helgerson on December 9, 2014, for failure to return completed "Fit for Duty" paperwork. The record is unclear as to how long Mr. Helgerson worked light duty before Mr. Sharp advised him that he could not work without a completed "Fit for Duty" form. As such, Mr. Helgerson failed to establish the requisite period of temporary disability. Accordingly, this Court holds that Mr. Helgerson is not entitled to temporary disability benefits at this time. The Court's decision at this interlocutory stage of the proceedings does not prevent Mr. Helgerson from pursuing these benefits at a later Compensation Hearing.

**IT IS, THEREFORE, ORDERED** as follows:

1. PSSI shall provide Mr. Helgerson a panel of orthopedic physicians from which he may select a physician for evaluation and treatment of any work-related injury pursuant to Tennessee Code Annotated section 50-6-204 (2014).

2. Mr. Helgerson is not entitled to temporary disability benefits at this time.

3. The parties or their counsel shall appear for the Status Conference previously scheduled for **Wednesday, September 30, 2015, at 9:00 a.m.** eastern time.

4. Unless interlocutory appeal of the Expedited Hearing Order is filed, compliance with this Order must occur no later than seven business days from the date of entry of this Order as required by Tennessee Code Annotated section 50-6-239(d)(3) (2014). The Insurer or Self-Insured Employer must submit confirmation of compliance with this Order to the Bureau by email to WCCompliance.Program@tn.gov no later than the seventh business day after

9

entry of this Order. Failure to submit the necessary confirmation within the period of compliance may result in a penalty assessment for non-compliance.

5. For questions regarding compliance, please contact the Workers' Compensation Compliance Unit via email WCCompliance.Program@tn.gov or by calling (615) 253-1471 or (615) 532-1309.

**ENTERED this the 20th day of August, 2015.**

**PAMELA B. JOHNSON**
**Workers' Compensation Judge**

Status Conference:

A Status Conference was previously set for **Wednesday, September 30, 2015, at 9:00 a.m.** eastern time with Judge Pamela B. Johnson, Court of Workers Compensation Claims. You must dial 855-543-5041 toll free or 865-594-0091 to participate in the Status Conference.

Please Note: You must call in at the scheduled date/time to participate. Failure to call in may result in a determination of the issues without your further participation.

Right to Appeal:

Tennessee Law allows any party who disagrees with this Expedited Hearing Order to appeal the decision to the Workers' Compensation Appeals Board. To file a Notice of Appeal, you must:

1. Complete the enclosed form entitled: "Expedited Hearing Notice of Appeal."

2. File the completed form with the Court Clerk *within seven business days* of the date the Workers' Compensation Judge entered the Expedited Hearing Order.

3. Serve a copy of the Expedited Hearing Notice of Appeal upon the opposing party.

4. The appealing party is responsible for payment of a filing fee in the amount of $75.00. Within ten calendar days after the filing of a notice of appeal, payment must be received by check, money order, or credit card payment. Payments can be made in person at any Bureau office or by United States mail, hand-delivery, or other delivery service. In the alternative, the appealing party may file an Affidavit

of Indigency, on a form prescribed by the Bureau, seeking a waiver of the filing fee. The Affidavit of Indigency may be filed contemporaneously with the Notice of Appeal or must be filed within ten calendar days thereafter. The Appeals Board will consider the Affidavit of Indigency and issue an Order granting or denying the request for a waiver of the filing fee as soon thereafter as is practicable. Failure to timely pay the filing fee or file the Affidavit of Indigency in accordance with this section shall result in dismissal of the appeal.

5. The parties, having the responsibility of ensuring a complete record on appeal, may request, from the Court Clerk, the audio recording of the hearing for the purpose of having a transcript prepared by a licensed court reporter and filing it with the Court Clerk within ten calendar days of the filing of the Expedited Hearing Notice of Appeal. Alternatively, the parties may file a joint statement of the evidence within ten calendar days of the filing of the Expedited Hearing Notice of Appeal. The statement of the evidence must convey a complete and accurate account of what transpired in the Court of Workers' Compensation Claims and must be approved by the workers' compensation judge before the record is submitted to the Clerk of the Appeals Board.

6. If the appellant elects to file a position statement in support of the interlocutory appeal, the appealing party shall file such position statement with the Court Clerk within three business days of the filing of the Expedited Hearing Notice of Appeal, specifying the issues presented for review and including any argument in support thereof. If the appellee elects to file a response in opposition to the interlocutory appeal, appellee shall do so within three business days of the filing of the appellant's position statement.

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the Expedited Hearing Order was sent to the following recipients by the following methods of service on this the 20th day of August, 2015.

| Name | Certified Mail | Via Fax | Via Email | Service sent to: |
|---|---|---|---|---|
| D. David Sexton, Esq. | | | X | dsexton@sextonandwykoff.com megan@sextonandwykoff.com |
| Charles W. Gilbreath II, Esq. | | | X | cgilbreath@noogalaw.com |
| Scott N. Davis, Esq. | | | X | sdavis@fleissnerfirm.com |

**PENNY SHRUM, COURT CLERK**
wc.courtclerk@tn.gov

12